Good morning, Your Honors. May it please the Court, Anthony Taylor for the Newport Beach officers, Officers Maroney and Officer Aguilar. Your Honors, I'd like to reserve three minutes for rebuttal. Your Honors, this Court in the West v. City of Caldwell matter decided on July 25th, 2019, looked at the qualified immunity standard and the standard has been refined and that standard was addressed in the U.S. Supreme Court cases of Keesler v. Hughes and District of Columbia v. Wesby is requiring a high level of specificity for determining whether or not the law is established so a reasonable officer is on notice that their activity is not consistent with federal law. And in this case, Your Honors... Are you... so you're jumping into qualified immunity. I'd be interested in asking you about... I gotta be honest with you, this whole case has been... who in the world arrests an individual for failing to pay cab fare? How in the world did this happen? This just seems to me to be strange at a minimum. So can you... I mean why isn't that... on the unlawful arrest, do you concede that there was a constitutional violation here and you're just arguing qualified immunity? I don't concede that, Your Honor, but I am... What's the probable cause to arrest someone in these circumstances? Well, it starts with Penal Code Section 484, Your Honor. Which requires an intent. It does, but it can be established by circumstantial evidence. It doesn't have to be... Yeah, but what circumstantial evidence was there? She had a credit card. The credit card didn't work. I think we've all had experiences like that. Credit cards get, you know, stopped for a variety of reasons and to jump from that when she said, hey, I'm willing to pay the cab fare to, well, we're just going to arrest you. I just don't understand it. The part where there's not the jump here, Your Honor, to address that issue is these officers, they didn't just show up and respond to this on one call and just take the plaintiff into custody. Well, let's be clear. Initially, they threatened to do that. You're right. Then they escorted her to her apartment. They did and she, they circumstances actually reduced the probable cause, not increase it. Well, I would disagree in that the statements that she makes when she says, you know, first of all, she doesn't offer any plausible explanation why her credit card's not working. Your Honor raised the point that this was you or I and we went to a restaurant. Sometimes I don't know. When I was coming here from Chicago, I credit card was declined and I don't know why because two transactions later it was accepted. I don't know why. I'll never know why. Well, and in this case, Your Honor, we have the situation where the officers are trying to actually de-escalate the situation. There is a pretty heated argument going on between the cab driver and Ms. Watts that's that's documented. There's a 911 call and the officers show up and they say, okay, let's find a way so this cab driver can get paid and then get back on duty to their next call. Which, by the way, it's happened, hasn't it? Hasn't the cab driver been paid the $14.60 that caused this mess? It took the DA actually filing the case and then part of the dismissal, that money was paid when the case was dismissed. So it it did actually happen where they finally got paid, Your Honor. Okay. The thing about this statute, though, Your Honor, I mean there's not a... and Judge Guilford, the district judge, had... Here's my point. The most expensive cab ride in the history of the area. There aren't any such cases. And I mean just this just strikes me as the case where they should have exercised some discretion. I mean we have jaywalking statutes and I mean I've been to San Francisco where I'm from in Idaho Falls knowing jaywalks. Or if we do, there's no laws against it. I don't know. But San Francisco, it's happening all the time and you don't see police officers down there arresting everybody. I mean just like in a case like this, it just seems like there was far too much time spent into this. On the other hand, I think you have a decent argument on qualified immunity here. And I guess we'll hear about, you know, what the strongest case is. But could you address that? What what is the case law that requires where the officers would have known... I guess what I'm saying is seems to me there's a situation where the officers knew they were acting outside of the bounds of proper discretion. But that doesn't mean that they should be personally liable. And is there some wiggle room there? There is, your honor. And the key case here is Connor versus Hyman from the Ninth Circuit. This court at 672 F. 3rd 1126. We cited our reply brief at page 18 of our reply brief. But that's the casino overpayment dispute. And that's where you have a situation where somebody actually just got paid too much in their winnings at a casino. And the police got brought in to address the situation, ultimately made an arrest. And this court upheld qualified immunity. And that's an example of a similar type situation. Did they find a constitutional violation but upheld qualified immunity there? That is my recollection. Yeah, that's my... And then the Schaffer case, Schaffer versus County of Santa Barbara. That case dealt with the infamous water balloon fight there in Santa Barbara. And the officer ended up getting to a situation where some force had to be used. And this court, again, in that case, upheld qualified immunity. So, and the big case here, really, your honors, is the People versus Hartley, which doesn't come out until two days after the incident in question. That's really the key here. If you had an officer today that had the benefit of People versus Hartley that says, you gotta have quite a bit of intent, a showing of intent to prove up a Penal Code Section 484 violation, that's a different situation. 484 is what? 484. This is the theft by false... The theft. It's the theft by false pretense. The district court, though, said that law is not new. That's well established. They said it's well established, but the California Court of Appeal has very strict standards in terms of publishing opinions. They don't publish many of this. At heart, you are trying to argue that they reasonably thought they had probable cause to think she was stealing the cab ride? Correct. And didn't she say that she wanted to call... The credit card didn't work. That was it. Now, and then she wanted to call her boyfriend, but she didn't know where he was. And then she said, I'll go up and get some money. Well, she does things that are totally inconsistent, though, where she says to the officers, come with me in very an inviting manner, come with me, meet my dogs, meet my cats, we're gonna all take care of this together. And then all of a sudden, she says, no, we're not doing that, which the officers interpreted... She said, I didn't invite you inside, I thought. They walked into her apartment. Well, it's right before, but the officer... I'm not sure what they were doing. The officers interpreted that differently, though. They didn't interpret it literally, you're not invited in. They interpreted that as, I'm not going to pay you anymore. That's how it came across in that context. Is that your argument? Is that what the theory is? Well... That when she didn't want them to come into her apartment that she was saying, I'm not gonna pay you? That's the idea? That was how it came across. When she said that, it's like, I'm not gonna pay anymore, or I never intended to pay all along. This is what the officer Moroney said. Once she decided she was going to not let us into her apartment, I made the determination that I was done trying to help her pay her cab fare and just took her into custody. She didn't say that made me think she wasn't gonna pay, she was just tired of her. Well, looking at the totality of it, though, if she was just tired of her, so to speak, the officers wouldn't have gone through all these efforts to try to resolve everything. Officer Moroney tried personally to use the credit card. They tried to diffuse the situation. That's what they're trained to do, is to try to diffuse it. And the bottom line is... But they also could... They didn't do everything they could have. They could have also just said, hey, you owe the credit. This is a civil dispute. You guys go work it out. It happens all the time. We don't bring officers in to every civil dispute. But that's where the law is unsettled, though, until People v. Hartley comes out. So I think we're getting a lot of... There's a lot of focus on this first part, is there a probable cause, which was certainly one of my arguments. But when you look at it, just the law being unsettled on the undisputed facts entitles these officers to qualified immunity. So what about the illegal entry? It strikes me, what was the probable cause for them to come in? And I interpreted it, just for what it's worth, there's a million different interpretations here, that she had allowed them to come in, but then they started using their flashlights to kind of like search the house, which I don't understand why they were doing that. The district court, when the district judge looked at the on the undisputed facts... Determined they didn't use the flashlights. Well, they didn't attempt to do any type of search. But they pulled out their flashlights. They did have their flashlights out. Okay. And to me, that's what... It's admittedly hard to kind of reconstruct this, but that seems to be where she was like, wait a second. I told you you'd come in, but I didn't tell you you could come any further. And that's... I'm trying to make sense of, as you point out, there's some inconsistent statements, but there's also some inconsistent actions. And... But why wasn't that a violation of her Fourth Amendment rights when they came in, even if she later didn't consent to that? Well, the Santana case indicates that at the threshold of the doorway, and we're in that area, there's no constitutional protection. Well, I understood that to be the threshold outside of the house, not the threshold inside of the house. The cases interpreting Santana have... And we've set those forth in our moving papers for the motion for summary judgment and the briefing. They've had a broader zone in terms of what's allowed. The reason why, though, the officers had concerns is because of what Ms. Watts said. She specifically said, we, we. She kept talking, referencing almost like there was somebody else in the apartment. So there was a concern about that. Maybe she just had her cats. So I see that I'm getting close to... Yeah, you can reserve. If I could reserve unless there's more questions. Nope, you're fine. Okay. Thank you. May it please the court, Brenton Aiken on behalf of the... Brenton Aiken hands, I'm sorry, on behalf of Eppley. Make no mistake, this case is about whether a declined credit card amounts to probable cause for theft. And as the district court noted, and I agree, that's an unreasonable interpretation of the law here. So let's say we agree with you. What's your best case for why this was clearly established at the time? Okay, well, let's start with the federal law. We have cases starting in 1989 with Kennedy. And was that a Ninth Circuit case? The Ninth Circuit case, establishing that civil disputes can't amount to probable cause. In 1995... Well, hold on, back up. Kennedy says civil disputes can't, but what about civil disputes that could also be criminal? I mean, that seems to be the issue here is we need to look at the criminal prong. I mean, it is tough. There's a lot of criminal actions that could also be civil. And just because it happens to be civil, it can't be that it precludes you from taking the criminal action. So what is the case that says criminally, this was well established, that there was no probable cause here? Well, there's a case in the Ninth Circuit called Peng, which it interprets this line of extortion cases. And it says it distinguishes them on grounds that if there's an allegation of domestic violence, that would be, for example, an accompanying criminal element that would not be present... I'm sorry, that if it's present accompanying a civil dispute, that could possibly give probable cause to arrest. But if it's a purely civil dispute and there's no indication otherwise, that by definition cannot amount to probable cause for arrest. Now, aside from just the federal cases in the California cases dating back to 1954, where Judge Treanor on the California Supreme Court noted that ordinary commercial defaults cannot, by definition, cannot amount to probable cause. Now, a line of cases which stretch all the way to the day after the incident in this, the aforementioned Hartley case, that principle that ordinary commercial defaults can't amount to probable cause, the district court noted, it's nothing new. Now, the fact that it happened to be applied in the context of, in the Hartley case, it involves somebody refusing to pay a cab fare. It's illustrative, but it's not necessary for finding that the law is clearly established. The principle being, if you don't pay a bill, you don't have cause to think that they're stealing. Right. So if it's... It doesn't have to be in a cab. Yeah. So the fact that it happened to be a cab in that instance, tomorrow it could be a bus, or it could be an Uber, or it could be a restaurant bill. In fact, that was actually the case in the Allen case. Bottom line is, civil disputes, if it's a purely civil dispute, it can amount to probable cause. That is clearly established. In fact, the Stevens v. Rose case, that case, those were the actual... That was the language that was used. It is clearly established that from the officer's point of view, Watts offered a credit card, was declined, and she said she'd get her boyfriend to come and pay, and he didn't come. Then she offered to let the police escort her to the apartment to get the cash, but then revoked her consent once she crossed the threshold. After every promise to pay fell through, couldn't a reasonable officer believe she never intended to pay? First of all, she never refused to pay. She never said that she was never going to pay, or didn't have the means to pay. The only indication... There was no indication that she never intended to pay. She simply refused to consent to their entry, and the officers, per counsel's representation, interpreted that as her refusing to pay, which would be an unreasonable interpretation of her words. But just to be clear here, the law being clearly established about civil disputes, not amounts of probable cause, and specifically ordinary commercial defaults, that can be clearly established. But under the facts of the case, the specific facts of this case, it also must be clear to the officer. And so applying that principle, it could not be clear to the officer here. He could not have probable cause of intent. And by the way, that is also a clearly established principle here in the Ninth Circuit, and a long line of cases establish that. You must, if specific intent is an element of the crime, you must have probable cause of that element. So our client never refused to pay the bill. She offered to go and retrieve cash from her apartment. Initially the officers denied her that, and then they later agreed. They accompanied her as she was on her way to go and get the cash. She called her boyfriend to get the cash to secure payment for the cab ride. In other words, there's just no indication here that she had any intent to defraud. Is there anything in the record that suggests that the officers thought she was going, she wasn't going to, she was going to leave the apartment without paying? No, there's nothing in there that suggests that she was going to leave the apartment without paying or going to defraud them. In fact, the fact that she led them to her house shows that there's nowhere she could have gone had she even decided to, you know, flee and not pay. Is it upstairs? Yes, so she lives up a flat of stairs. Now it's also worth noting that the officers, one of the officers admitted that she didn't believe that her card being declined was evidence of her intending to defraud the cabbie, and she also admitted that her card, her card had also been declined. The officer's card had been declined in the past. I understand that's happened to one of your honors, and full disclosure that's also happened to me too, and I never intended to defraud anybody, and the bottom line is that's just such a common occurrence these days, that to hold that that even approximates probable cause of theft, that would be an, it would be an extremely unreasonable interpretation of death law. What was the, she had had some drinks, is what does the record show was, was that part of what was argued as giving probable cause? Well, no, interestingly it was not. It was, it was an argument that by my reading was waived, and it's also been, it was waived in the district court and on appeal, but I did address it in the briefs nonetheless. It's, she had secured a cab ride home, which is the safe option relative to driving drunk or something like that. She made it all the way home, and the officers, one of the officers remarked that given the six-inch stiletto heels she was wearing, that she was walking remarkably well. She's, I believe the term she uses, that she was impressed. So there's no indication here that she was in violation of Section 640-F California Penal Code, which is the drunken, colloquially, drunken public, because she was able to care for herself. She was clearly able to care for herself, and in any event, that, that argument has been waived. It appears that the argument, the sole crime that appellants are relying on is the intent to defraud. So theft by false pretenses. Can I ask about a couple of the other issues here? Excessive force, those are pretty tough claims to state, and here, I mean, other than handcuffing her, what evidence do you have, what evidence is in the record, an excessive force claim? Well, we have the evidence that she was not, not violent, that she didn't present any apparent threat, for example, by being armed, that she was compliant with the officers. We also have that it happened... That seems to be the argument that she shouldn't have been handcuffed in the first place, but what, what evidence is there of excessive force? Oh, handcuffing can constitute excessive force under certain circumstances, if you have a So, for example, the Lalonde case, which we included in our brief, Meredith versus Erath. There's a case called Hansen. There's a number of cases that state that it can constitute excessive force if it's excessively tight, and it just so happens in the Lalonde case, it's remarkably similar in that it involves the same type of force, which is excessively tight handcuffs and takedowns with a nonviolent suspect who is not apparently presenting any danger to the officers, and it involves the circumstance of where the officers crossed the threshold of the home and attempted to arrest the, the, the subject in the home, and, I don't know, point of interest, it also happened during the weekend after midnight, so it's pretty factually congruent with this case, such that it would be clear to a reasonable officer that you could not use... What court was that one in, I forget? That is in the Ninth Circuit. On the First Amendment retaliation claim, as I understand it, that's based, the claim is based on the fact that when she exercised her First Amendment right to say you can't come any further than that, that the officers then responded to that, and that was what prompted the arrest, is that right? Yes, that's correct. Now, we have a case here, Sharp versus Orange County, which just, additional point of here as well, when, when there's a statement from the officer that is a phrased as a statement of but-for causation, that, that states the First Amendment claim, so if it's accompanied by the arrest, for example, so in Sharp... And Sharp, in your view, would, would find that that law is clearly established in this case? Yes, in fact, that's exactly what the court held. It upheld a law was clearly established, because that was not the first case to hold that, but when an officer says, if this, then that, that's why they took the action. So in this case, our client said, no, you can't come in. Okay, then we're taking you to jail. It's, you know, looked at, looked, looked at in its totality, that's phrased as an if-then proposition. If you do this, then we're taking this action against you in retaliation for exercising your rights. So, just, I'd like to address some of these cases that, that counsel's mentioned, come down from the Supreme Court every, every year, a new per curiam or two comes down, puts a new gloss on qualified immunity. Well, while the law fundamentally stays the same, and the law must be clearly established so that a reasonable officer would, all reasonable officers would know that their action was a violation of that person's rights. Now, the, the latest round of cases, Westby, West, I believe, and there were, there were some other that counsel had mentioned, they don't fundamentally change the law. The requirement is still the same. The law must be clearly established. It doesn't need to be 100% on all fours in every single aspect, because, of course, that's impossible, that's an impossible bar to meet. And the Supreme Court has also cautioned in its past decisions that qualified immunity is no license to lawless conduct. So, if the conduct at issue is illegal under clearly established law, if, if it's, even if it's not the same exact situation, it can still be a violation of clearly established, clearly established law. So that's, and, and I'd like to point out that just with arresting somebody for having a declined credit card, it, the, the district court pointed out that if you arrest somebody for having a declined credit card, that means anybody who has a declined credit card can be arrested for theft. It's just, it's one of those propositions that's so patently absurd and unreasonable that you, you, it, it almost, it explains itself. And there are cases that are like that. You know, there, there was a, a case that went up to the Supreme Court where the court noted that there's never been a case of social services selling kids into slavery to, to clearly establish that that's illegal. And there never will need to be one because any reasonable person is going to know that that's, you know, unlawful. So, arresting somebody who, for theft, just because their credit card has been declined, when it's pretty much common knowledge, and, and it, especially under the established cases, that that's, that that's just not theft. It doesn't approach theft. So what you're saying is we're never going to get a federal case that's, or unlikely. Never say never, but you may. On all fours with this one. So, and we, you know, we end up. Hope. We, we, they're very well made. Just to be safe, we could, we could write that case. Yes, yes. Actually, you may establish that here to the extent it needs to be established. But it is obvious under established case law that that does not amount to like the First Amendment claim, depended upon probable cause. So the, this line of cases, talking about the, the doorway exception, if the person is standing in the threshold. First of all, a client was not standing in the doorway or the threshold when she was seized. But even if she were, you would, you would need, officers would need probable cause in order to cross the threshold. So the search is unlawful. The search, the entry into the apartment is unlawful in the absence of probable cause. So that argument is, yeah, without probable cause, the district court's ruling on that should be upheld. Was it unlawful even in the presence of probable cause? Yes, it was. Because you would need to have a hot pursuit of the argument that my client is standing in the threshold. She would actually have to retreat and run back into the house. That's, there's no evidence that that happened. My client specifically denies that. That would. But she did invite him into, across the threshold, as I understand it. She had made some, my time is up, but she had made some statements earlier on. I was saying, like, come in, meet my dog, friendly statements. But before they had entered, and she saw that they were, you know, about to just, waltz on in, and she saw that they were, like, ready to conduct, like, a search with flashlights and whatnot. Then she. She said stop before they crossed the threshold. Yes. So she, and she, that was fully within her rights. Okay. Thank you, counsel. Thank you. Your Honor, starting with the People v. Hartley case, an argument was made by counsel that that case is nothing new. But yet the California rules for published cases require that in order for a case to be published in the California Courts of Appeal, it has to set some new issue of law, some key issue. Most cases aren't even published. The district court cited cases. They cited cases, but they weren't specific enough under the requirements. And the other thing, respectfully, that the district court didn't do is the district court looked at this with a very general lens of analysis. It didn't get into all of the specific details in the factual scenario here. And when you look at the totality of the situation and the demeanor of the plaintiff and the discussions that were involved, it's very different than an ordinary situation where somebody's credit card doesn't work. This, there was definitely indication based on the totality of the circumstances of the demeanor that there was more going on here, and the officers therefore acted reasonably. And we respectfully request that the district court ruling be reversed. Thank you. Have you guys tried to settle this? We have engaged in settlement efforts. They have not been fruitful, unfortunately. That seems clear. All right. Thank you, counsel. Thank you. The case is
judges: Schroeder, Lefkow, Nelson